**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE SEVENTH CIRCUIT**

—————————————————————

**No. 25-1271**
**RAYMOND E. ECHEVARRIA,**

Plaintiff-Appellant,

v.

**DARRIN JACKSON, CYNTHIA SPINA, and**

**FOREST PRESERVE DISTRICT OF COOK COUNTY,**

Defendants-Appellees.

—————————————————————

Appeal from the United States District Court

for the Northern District of Illinois, Eastern Division

Case No. 1:20-cv-05271 | Hon. LaShonda A. Hunt

—————————————————————

**AMENDED REPLY BRIEF OF PLAINTIFF-APPELLANT**

**RAYMOND E. ECHEVARRIA**

—————————————————————

Michelle Gonzalez
105 Canterbury Lane, #940
Bolingbrook, Illinois 60440
312 504-7796
michelle@lifewillsandtrusts.com
Attorney for Plaintiff-Appellant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iii

JURISDICTIONAL STATEMENT ...................................................................1

STANDARD OF REVIEW ................................................................................1

INTRODUCTION .............................................................................................2

ARGUMENT .....................................................................................................4

I.   Defendants' FRAP 28 and Waiver Arguments Fail..............................................4

II.   Deemed Admitted Facts Do Not Override Jackson's Own Contradictory Documents.........................................................................................................8

III.   Jackson's Own Contemporaneous Records Destroy the Probable Cause Narrative.......................................................................................................11

A. Every Contemporaneous Record Shows 'REFUSED' — Zero Show Complainant Cooperation.............................................................................11

B. 'REFUSED TO SIGN': Jackson's Own Handwriting Destroys His Sworn Testimony...................................................................................................13

C. Jackson's Warning-Only Rule: He Admitted He Lacked Authority to Cite...............................................................................................................14

D. Both Clothing Identifiers Failed on Jackson's Own Deposition........................................................................................................15

E. The 10-Minute Timeline Is Physically Implausible on Jackson's Own Documents...................................................................................................16

F. No Positive Identification Was Ever Made....................................................17

G. The Tow Was Infected by the Same Deficient Probable Cause..................................................................................................18

H. Malicious Prosecution: Both Probable Cause and Malice Are Jury Questions..................................................................................................19

IV.   Appellant Corrects the Kingsley mischaracterization.....................................20

V.   Qualified Immunity Fails When the Officer's Own Records Contradict His Sworn Account..................................................................................................21

VI.   The Monell Claim Survives: Ledesma Resolved Statutory Interpretation, Not This..................................................................................................23

VII.  The IIED Claim Presents a Genuine Jury Question Under McGrath..................................................................................................25

VIII. Class Certification: Appellant Does Not Press This Issue on Appeal..................................................................................................26

**CONCLUSION** ..................................................................................................**27**

**CERTIFICATE OF COMPLIANCE** ..........................................................**28**

**CERTIFICATE OF SERVICE** ...................................................................**28**

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................1, 9, 10, 13, 14, 22, 27

*Bailey v. City of Chi.,* 779 F.3d 689 (7th Cir. 2015) .................................................20

*Betco Corp., Ltd. v. Peacock,* 876 F.3d 306 (7th Cir. 2017) .....................................5, 7

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................................9

*Cibulka v. City of Madison,* 992 F.3d 633 (7th Cir. 2021) .......................................22

*Erickson v. Pardus,* 551 U.S. 89 (2007) ...............................................................5

*Feltmeier v. Feltmeier,* 207 Ill. 2d 263 (2003) ..................................................25, 26

*Florida v. J.L.,* 529 U.S. 266 (2000) ................................................................12, 13

*Friend v. Valley View Cmty. Unit Sch. Dist. 365U,* 789 F.3d 707 (7th Cir. 2015)

.........................................................................................................................6

*Gross v. Town of Cicero,* 619 F.3d 697 (7th Cir. 2010) ..........................................5, 6

*Gutierrez v. Kermon,* 722 F.3d 1003 (7th Cir. 2013) .....................................16, 17, 20

*Hinterberger v. City of Indianapolis,* 966 F.3d 523 (7th Cir. 2020) ..................8, 9, 10

*Holland v. City of Chi.,* 643 F.3d 248 (7th Cir. 2011) ...................................19

*Hunter v. Bryant,* 502 U.S. 224 (1991) ..........................................................22, 23

*Illinois v. Gates,* 462 U.S. 213 (1983) ...........................................................12, 13

*Keeton v. Morningstar, Inc.,* 667 F.3d 877 (7th Cir. 2012) ............................10

*Kingsley v. Hendrickson,* 576 U.S. 389 (2015) ...............................................20, 21

*McGrath v. Fahey,* 126 Ill. 2d 78 (1988) ........................................................25, 26

*Miranda v. Cnty. of Lake,* 900 F.3d 335 (7th Cir. 2018) ...............................24

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) .......................................23

*Muhammad v. Pearson,* 900 F.3d 898 (7th Cir. 2018) ...................................15

*Pasiewicz v. Lake Cnty. Forest Pres. Dist.,* 270 F.3d 520 (7th Cir. 2001) ....12, 15

*Payne v. Pauley,* 337 F.3d 767 (7th Cir. 2003) .............................................21, 23

*Solomon v. City of Naperville,* No. 22 C 4596, 2023 WL 1992195 (N.D. Ill. 2023) ....................................................................................................20

*Stainback v. Dixon,* 569 F.3d 767 (7th Cir. 2009) ..................................................22

*Swanigan v. City of Chi.,* 775 F.3d 953 (7th Cir. 2015) ........................................23

*Teesdale v. City of Chi.,* 690 F.3d 829 (7th Cir. 2012) ...........................................24

*Tolan v. Cotton,* 572 U.S. 650 (2014) ...........................................1, 9, 10, 11, 22, 27

*Valentino v. Vill. of S. Chi. Heights,* 12 F.3d 837 (7th Cir. 1993) .........................24

*Waukegan Potawatomi Casino, LLC v. City of Waukegan,* 128 F.4th 871 (7th Cir. 2025) ......................................................................................................1

**CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES**

U.S. Const. amend. IV ....................................................................passim

42 U.S.C. § 1983 ...........................................................................passim

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. §§ 1331, 1343 .......................................................................1

Fed. R. App. P. 28 ..............................................................................4, 5

Fed. R. App. P. 32 ...............................................................................28

Fed. R. Civ. P. 56(a) .............................................................................1

N.D. Ill. L.R. 56.1 ..............................................................................8, 9

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. The district court entered final judgment on January 22, 2025. R. 106.

Appellant timely noticed an appeal on February 19, 2025. R. 107. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo. Waukegan Potawatomi Casino, LLC v. City of Waukegan,* 128 F.4th 871, 876 (7th Cir. 2025). Summary judgment is proper only when 'there is no genuine dispute as to any material fact.' Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014). Courts may not weigh evidence, resolve credibility disputes, or choose between competing factual narratives. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). If a reasonable jury could find for the nonmoving party, summary judgment must be denied. *Id.*

## INTRODUCTION

This appeal presents a narrow but dispositive question: whether summary judgment may be granted where an officer's own contemporaneous records directly contradict the factual basis he asserted for probable cause.

Defendants' brief largely avoids that question. Defendants devote the first nineteen pages — nearly forty percent of their brief — to procedural arguments designed to prevent this Court from reaching the merits at all. FRAP 28 noncompliance. Deemed admitted facts. Frivolousness. Waiver. Each is a locked door intended to keep this panel away from what Jackson actually wrote on September 30, 2019.

What Jackson wrote is this: his citation — Document No. FP 1028782, defendants' own Exhibit 8, Dkt. 89-8 — says, in his own hand:

**'REFUSED TO SIGN'**

His police report narrative — defendants' own Exhibit 7, Dkt. 89-7, at 2 — identifies the complainant as a 'refused complainant.' The CAD dispatch records — authenticated by defendants' own affiant Teresa Serna, Dkt. 89-5 — show every complainant field as 'REFUSED.' Defendants themselves admitted both of Appellant's supporting facts in Dkt. 99 at ¶¶ 1-2 establishing Serna's practice of entering 'REFUSED' when a caller declines to identify themselves.

And Jackson testified in his own deposition — defendants' own Exhibit 2, Dkt. 89-2 at 74:7-8 — that when a complainant refuses to sign a complaint, he has authority only to issue a warning, not a citation.

Three contemporaneous records say 'REFUSED.' Zero contemporaneous records say 'willing to sign.' Jackson's own deposition establishes that 'REFUSED' means warning-only. He issued a citation and authorized an administrative tow anyway.

These are not Appellant's characterizations of a disputed document. These are defendants' own exhibits, containing Jackson's own words and Jackson's own handwriting. The district court granted summary judgment without addressing this contradiction. Under *Anderson* and *Tolan,* that is reversible error.

**<u>ARGUMENT</u>**

## I. Defendants' Procedural Arguments Do Not Avoid De Novo Review

7

Defendants argue that FRAP 28 deficiencies, waiver, and deemed admissions prevent review of the merits. None do.

This Court reviews summary judgment de novo. Waukegan Potawatomi Casino, 128 F.4th at 876. The dispositive evidence Appellant relies on consists of defendants' own exhibits already in the record: the citation (Dkt. 89-8), the CAD (Dkt. 89-5), the police report (Dkt. 89-7), and Jackson's deposition (Dkt. 89-2). Gross and Friend permit striking unsupported assertions — not dismissing an entire appeal where record citations exist.

Appellant raised probable cause and qualified immunity below. Dkt. 95 ¶¶ 18, 47. *Betco* applies to arguments never raised — not arguments underdeveloped.

Because the contradiction at issue arises from defendants' own contemporaneous exhibits, procedural framing does not eliminate the Rule 56 inquiry.

## II. Deemed Admissions Do Not Erase Contradictions Within Defendants' Own Exhibits

Defendants argue that because certain facts were deemed admitted under LR 56.1, summary judgment automatically follows. That is incorrect.

*Hinterberger* governs which party's factual statement controls. It does not resolve internal contradictions within the movant's own evidence. Here, Jackson testified the complainant was willing to sign. But defendants' Exhibit 8 says "REFUSED TO SIGN." The CAD reflects "REFUSED." The police report references a "refused complainant."

Those exhibits are part of the admitted record. Deemed admissions do not authorize courts to ignore documentary contradictions visible on the face of the record.

Under *Tolan* and *Anderson,* courts may not credit testimony over conflicting record evidence at summary judgment. That is precisely what occurred.

## III. Jackson's Contemporaneous Records Undermine Probable Cause

The district court's ruling rests on Jackson's deposition claim that a cooperative complainant identified Appellant. But three contemporaneous records — the CAD, police report, and citation — all reflect "REFUSED."

At the time of detention and citation, the record showed:

1. An anonymous 911 caller marked "REFUSED."

2. No documented complainant identity.

3. No positive identification of Appellant.

4. Clothing discrepancies by Jackson's own testimony.

5. No independent officer observation.

6. The notation "REFUSED TO SIGN."

Whether those facts establish probable cause is a jury question.

### A.   Every Contemporaneous Record Shows 'REFUSED' — Zero Show Complainant Cooperation.

Teresa Serna, the 911 dispatcher, provided a sworn affidavit — defendants' Exhibit 5, Dkt. 89-5 — establishing her consistent practice: whenever a caller declines to identify themselves, she enters 'REFUSED' in the caller information fields. Defendants admitted both paragraphs 1 and 2 of Appellant's additional facts (Dkt.

9

99 ¶¶ 1-2) establishing this practice and its application to this call. The CAD record reflects:

**CALLER NAME: REFUSED  |  CALLER ADDRESS: REFUSED  |  COMP: REFUSED**

Every complainant identification field: 'REFUSED.' The dispatcher's own name query at 13:13:15 returned nothing. This is not administrative shorthand. By Serna's own sworn testimony — defendants' own exhibit, admitted by defendants — 'REFUSED' means the caller declined to identify themselves to dispatch. Dkt. 89-5; Dkt. 99 ¶¶ 1-2. This documentary contradiction creates a classic credibility dispute that must be resolved by a jury, not by judicial determination at the summary judgment stage.

Defendants assert that after meeting the complainant, Jackson radioed dispatch to confirm a cooperative witness. The CAD contains no entry reflecting any such confirmation. No supplemental notation, no caller identity update, no CAD modification appears anywhere in the dispatch log after Jackson's arrival. Dkt. 89-5. The only evidence of that alleged radio confirmation is Jackson's later deposition testimony. Where a critical probable cause fact — the transition from anonymous refused caller to identified cooperative complainant — rests solely on a later recollection that finds no support in the contemporaneous dispatch record, summary judgment is improper. This evidentiary gap is more significant than it first appears. Jackson testified under oath that he radioed dispatch specifically to report that the complainant was willing to sign and would wait at the entrance. Dkt. 89-2 at 12–14; Dkt. 89 ¶¶ 12–13. Sergeant Spina separately testified under oath that she heard that

radio transmission. Dkt. 89-3 at 33; Dkt. 105 ¶ 14. Two sworn witnesses — both defendants — thus confirm the same specific radio call occurred. Yet the CAD record, which captured every other dispatch communication that day including the initial anonymous call, contains no entry for this transmission. Dkt. 89-5. A radio call that two officers swore under oath was made, but that the official contemporaneous dispatch log does not record, is precisely the kind of factual conflict that Anderson and Tolan reserve for a jury. The panel cannot resolve on summary judgment whether this critical radio transmission actually occurred as both defendants claimed.*Anderson,* 477 U.S. at 255.

Defendants claim that Jackson's face-to-face interaction with 'Camille' transformed this anonymous call into something more reliable. Appellees' Br. 24-25. But 'Camille' appears nowhere in Jackson's original police report, nowhere in the CAD, and nowhere in any document created on September 30, 2019. 'Camille' appears only in Jackson's deposition, taken years later. Jackson testified he took no name, no ID, no vehicle plate, and no phone number from the person he allegedly met. Dkt. 89-2 at 37:13; 74:7-8.

*Pasiewicz v. Lake Cnty. Forest Pres. Dist.,* 270 F.3d 520, 524 (7th Cir. 2001), holds that a face-to-face complainant provides probable cause when the officer obtains 'information . . . establishing the elements of a crime.' Jackson obtained nothing verifiable. He asked an unidentified stranger at a forest preserve entrance whether he had called the police. The stranger said yes and pointed in a direction. That is not *Pasiewicz* corroboration — it is an unverified, unidentified assertion by a person

11

whose connection to the 911 call was never confirmed. Jackson's own deposition establishes he never confirmed the stranger at the entrance was the same individual who made the call. Dkt. 89-2 at 37:13.

Under *Illinois v. Gates,* 462 U.S. 213, 230 (1983), reliability requires assessment of an informant's basis of knowledge and veracity. Under *Florida v. J.L.,* 529 U.S. 266, 270 (2000), even a physical tip must provide independent indicia of reliability — a bare unverified assertion is insufficient. The person at the entrance gave only a directional gesture. That cannot constitute the 'almost always sufficient' face-to-face report *Pasiewicz* contemplates. 270 F.3d at 524.

Defendants' reliance on *Pasiewicz* fails because that case is factually inapposite in every material respect. *Pasiewicz* involved an identified citizen informant with verifiable identity, direct contemporaneous reporting, and no contradictory documentation whatsoever. The reliability presumption that *Pasiewicz* attaches to face-to-face citizen informants does not extend to an unverified stranger whose identity was never obtained, whose name appears nowhere in any contemporaneous record, whose existence as a complainant is supported by zero contemporaneous documentation, and who was recorded in every contemporaneous record as "REFUSED." Where the officer's own records affirmatively contradict the existence of a cooperative, identifiable complainant, *Pasiewicz*'s reliability presumption is inapplicable. It does not govern; it does not help; and invoking it does not save a probable cause determination that the officer's own contemporaneous documentation undermines.

At the moment of detention and citation, the contemporaneous record reflects: (1) an anonymous 911 caller marked "REFUSED" in every identifying CAD field (Dkt. 89-5); (2) no documented complainant name or contact information; (3) no notation that the complainant remained on scene; (4) no positive identification of Appellant by any witness (Dkt. 89-2 at 37:13); (5) clothing discrepancies acknowledged by Jackson in his own deposition (Dkt. 89-2 at 70:2-4; 86:1); (6) no independent officer observation of criminal conduct; and (7) no contemporaneous documentation that any officer — including any later-arriving officer or supervising sergeant — verified, secured, or documented the identity of an allegedly willing complainant before issuing the citation or authorizing the tow. The only source of complainant "willingness" appears in Jackson's later deposition testimony. Whether that constellation of facts amounts to probable cause is a jury question under *Anderson* and *Tolan*.

The district court's analysis isolates Jackson's later deposition testimony and treats it as dispositive. But probable cause must be evaluated under the totality of the circumstances — including contemporaneous documentary evidence and the absence of corroboration reflected therein. The totality here includes: (1) an anonymous 911 caller marked "REFUSED" in every identifying CAD field; (2) no documented complainant identity; (3) no positive identification of Appellant; (4) clothing discrepancies acknowledged by Jackson in his own deposition; (5) no independent officer observation of criminal conduct; (6) no documented radio confirmation of complainant cooperation after Jackson's alleged face-to-face contact; (7) the presence of a second officer and a supervising sergeant who did not secure or

document any complainant verification; and (8) Jackson's contemporaneous notation "REFUSED TO SIGN." When all circumstances are considered together, a reasonable jury could conclude probable cause was not established as a matter of law.

**B.   'REFUSED TO SIGN': Jackson's Own Handwriting Directly Contradicts His Sworn Testimony.**

The entire probable cause structure defendants built depends above all on one asserted fact: the complainant was willing to sign a complaint. Appellees' Br. 24-26. A willing complainant is the difference between an anonymous tip and a face-to-face report. It is what defendants say elevated the 'REFUSED' CAD entry into probable cause.

Jackson's own handwriting on Citation FP 1028782 — defendants' Exhibit 8, Dkt. 89-8 — says: 'REFUSED TO SIGN.'

This is not a characterization. This is not an inference. This is the officer's own contemporaneous notation, written on the day of the arrest, on the citation he issued. Three independent contemporaneous documents — the CAD (Dkt. 89-5), the police report narrative (Dkt. 89-7 at 2), and the citation (Dkt. 89-8) — all say 'REFUSED.' Zero contemporaneous documents reflect complainant willingness to cooperate.

Defendants cannot escape this contradiction by arguing that "REFUSED TO SIGN" is merely a semantic discrepancy. It is a factual impossibility. The citation was issued on the scene. The "REFUSED TO SIGN" notation is contemporaneous with issuance — the iCloud-metadata-authenticated photograph (Dkt. 115-3) confirms it was created September 30, 2019. The complainant had not signed at the moment of

citation issuance. Jackson testified the complainant's willingness to sign was the basis for probable cause at that same moment. A complainant cannot simultaneously be willing to sign a complaint and be contemporaneously recorded as "REFUSED TO SIGN" at the moment of citation issuance. That is not a credibility dispute. It is a logical impossibility that no version of the facts can reconcile without a factfinder choosing which account to believe.

Defendants' anticipated semantic escape — that "REFUSED TO SIGN" refers only to Appellant's refusal to sign the citation acknowledgment, not the complainant's refusal — fails on the face of the citation itself. Citation FP 1028782 (Dkt. 89-8) contains a designated field for "Complainant (if other than officer)." That field is blank. The citation's "Offense Committed" section contains no complainant name. The Offense/Incident Report (Dkt. 89-7) shows every victim field as "DNA" (Data Not Available). No contemporaneous document created on September 30, 2019 — not the CAD, not the police report, not the citation — reflects any complainant name, address, phone number, or identifying information. The sole source of the cooperative, willing, face-to-face complainant is Jackson's deposition testimony, taken years after the event. That is precisely the credibility dispute that *Anderson* reserves for a jury. 477 U.S. at 255.

Jackson's later deposition narrative says the complainant was willing. One deposition, taken years after the event, against three contemporaneous records from the day itself. Under *Anderson,* 477 U.S. at 255, when an officer's own contemporaneous records contradict his later sworn account, the credibility question

belongs exclusively to a jury. The district court resolved this in defendants' favor at R. 105 at 10-12 without acknowledging the contradiction. That is reversible error.

The specific nature of the district court's error warrants identification. The court's probable cause analysis at R. 105 at 10–12 relies exclusively on Jackson's deposition assertion that the complainant "said he would sign the complaint and would be waiting there to do so." R. 105 at 12. The order does not address the "REFUSED TO SIGN" notation on the citation (Dkt. 89-8). It does not address the "refused complainant" language in the police report narrative (Dkt. 89-7 at 2). It does not address the three "REFUSED" entries in the CAD record (Dkt. 89-5) or the dispatcher's sworn explanation of what "REFUSED" means. By crediting Jackson's deposition without reconciling it against his own contemporaneous documents — documents that were part of the summary judgment record — the district court resolved a credibility conflict in favor of the moving party. That is precisely what *Anderson* forbids at summary judgment. *477 U.S. at 255.*

By crediting Jackson's later testimony while disregarding his contemporaneous written notation stating "REFUSED TO SIGN," the district court improperly resolved a credibility conflict in favor of the moving party, which is prohibited at summary judgment. This constitutes reversible legal error.

Even if Defendants argue that "REFUSED TO SIGN" referred to Appellant's refusal to sign the citation acknowledgment — not the complainant's refusal to cooperate — the citation still leaves blank the space following "Offender exposed his genitals to," contains no complainant name, and the "Complainant (if other than

16

officer)" section is blank. Dkt. 89-8. No document created on September 30, 2019 reflects a cooperative complainant. The absence of contemporaneous documentation — not the semantic interpretation of the phrase "REFUSED TO SIGN" — is what creates the credibility dispute that precludes summary judgment.

**C. Jackson's Warning-Only Rule: He Admitted He Lacked Authority to Cite.**

Jackson testified in his own deposition that when a complainant refuses to sign a complaint, he has legal authority only to issue a warning — not a citation. Dkt. 89-2 (Jackson Dep.) at 74:7-8. Defendants themselves admitted this fact in their response to Appellant's statement of additional facts. Dkt. 99 ¶ 20 ('admit').

The logic is irresistible: Jackson knew the rule. Three of his own contemporaneous records show the complainant refused. By his own admission, a refused complainant means warning-only. He issued a citation and initiated an administrative tow anyway.

This is not a case of an officer making a reasonable good-faith mistake about a complex legal standard. This is an officer whose own deposition states the rule, whose own documents show the rule was triggered, and who acted contrary to both. That contradiction — between what Jackson knew the rule required and what his own records show the facts were — is a classic *Anderson* jury question. It cannot be resolved at summary judgment.

**D. Both Clothing Identifiers Failed on Jackson's Own Deposition Testimony.**

Defendants argue Appellant 'closely matched' the complainant's description. Appellees' Br. 25-26. But defendants' own Exhibit 7 establishes the dispatch description: blue and white striped tank top and gray sweatpants. Dkt. 89-5. Jackson's own deposition admits:

· Appellant wore a blue and **pink** tank top — not blue and white striped. Dkt. 89-2 at 70:2-4.

· Appellant wore **shorts** when Jackson first saw him coming off the trail. Dkt. 89-2 at 86:1; Dkt. 94 ¶ 21.

Both specific clothing identifiers failed — by Jackson's own testimony. Defendants invoke *Muhammad v. Pearson,* 900 F.3d 898, 909 (7th Cir. 2018), for the proposition that description discrepancies do not automatically negate probable cause. That is true when other corroborating evidence bridges the gap. But here the only corroborating evidence — the face-to-face interaction with a willing complainant — is itself contradicted by three 'REFUSED' documents. Failed clothing identifiers plus contradicted complainant account does not add up to probable cause as a matter of law. It is a fact pattern for a jury.

The description discrepancy is compounded by a separate evidentiary gap. The dispatch description — derived from the 911 call and reflected in the CAD (Dkt. 89-5) — and the alleged face-to-face description that Jackson claims the complainant provided are not documented as identical. The CAD reflects one set of descriptors from the 911 caller; the offense report reflects another. No contemporaneous record reconciles the two or establishes that the face-to-face description added anything to,

18

or was consistent with, the original dispatch description. Treating the two descriptions as interchangeable requires an inference in defendants' favor — an inference that summary judgment forbids.

**E. The Timeline Further Undermines the Narrative**

The CAD shows dispatch at 13:17:54 and Appellant's plate run at 13:33:28. Dkt. 89-5. Within roughly ten minutes, Jackson claims he located a complainant, obtained a description, searched twice, detained Appellant, and initiated the citation.

No CAD entry reflects any documented confirmation of complainant cooperation after arrival. The absence of contemporaneous documentation — combined with the "REFUSED" entries — creates a credibility dispute inappropriate for summary judgment.

**F. <u>No Positive Identification Was Ever Made.</u>**

At no point did any person positively identify Raymond Echevarria as the individual who committed any offense. Jackson testified he never had anyone identify Appellant as the perpetrator — no showup, no lineup, no photo array, no confirmation of any kind. Dkt. 89-2 at 37:13. The person at the entrance said only that the suspect was 'still back there' — a directional gesture, not an identification. Echevarria Dep. at 94-95 (Dkt. 89-4) (Appellant asked 'don't I get to [face] more than that?' and was told only that 'someone' was waiting). Jackson then located Appellant exiting a trail and concluded he matched the description, despite both clothing identifiers failing by his own admission.

Without positive identification, without verified complainant identity, without any independent officer observation of criminal conduct, and with both clothing identifiers failed, the only thing linking Appellant to the alleged offense was his presence in an area where an anonymous, refused caller had reported something. That is suspicion — not probable cause to detain and cite a specific individual.

The record further reflects that Officer Rogers arrived on scene approximately twenty minutes after Appellant's detention and that Sergeant Spina authorized the tow without appearing at the location. No officer — not Jackson, not Rogers, not Spina — secured, documented, or verified any complainant identity before the citation was issued or the tow was authorized. The absence of any corroborative effort by responding officers, despite the presence of backup and supervisory oversight, further underscores that the probable cause determination rested entirely on Jackson's unverified and undocumented oral account.

### G. <u>The Administrative Tow Was Infected by the Same Deficient Probable Cause.</u>

Defendants separately defend the administrative tow under FPD Code § 3-4-1, arguing Appellant's vehicle was used 'during the commission' of the alleged offense by transporting him to the preserve. Appellees' Br. 28-30.

First, Spina authorized the tow based entirely on what Jackson relayed to her — including the claim that the complainant was willing to sign. Dkt. 89-3 at 10-14, 34-35 (Spina Dep.). Spina was never on scene. Dkt. 89-3 at 20:16-18; Dkt. 94 ¶ 22 (citing Jackson Dep. at 97:16-20). Qualified immunity is evaluated at the moment of

the decision. At the precise moment Spina authorized the tow: no verified complainant identity had been documented by any officer; no complainant name appeared in any contemporaneous record; no officer had confirmed that any person was willing to cooperate; and the only contemporaneous documentation of the complainant's status — the citation Jackson had just written — said "REFUSED TO SIGN." Spina's authorization thus rested on a relay of information that the authorizing officer's own handwriting directly contradicted at the moment she acted. A tow predicated on deficient probable cause cannot be independently affirmed.

Second, 'during the commission' of public indecency cannot constitutionally extend to a vehicle that merely transported someone to the vicinity. Driving to a forest preserve is not the commission of indecent exposure. FPD Code § 3-4-1 requires a nexus between vehicle use and commission of the offense — not mere proximity to the location. Defendants' reading would authorize towing any vehicle belonging to anyone who drove to a location where a crime was later alleged to have occurred, with no constitutional limiting principle.

### H.  <u>Malicious Prosecution: Both Probable Cause and Malice Are Jury Questions.</u>

Defendants defend dismissal of the malicious prosecution claim on two grounds: (1) probable cause is assessed at the time of filing under *Holland v. City of Chi.,* 643 F.3d 248, 254 (7th Cir. 2011); and (2) there is 'no evidence whatsoever' of malice. Appellees' Br. 30-31.

21

On probable cause: *Holland*'s rule confirms that the analysis focuses on the filing date. On the date the citation was filed — September 30, 2019 — Jackson's own citation said 'REFUSED TO SIGN.' The same deficiency that infected the detention infected the filing. *Holland* does not rescue a citation filed on deficient probable cause; it simply confirms where the analysis is anchored.

On malice: The record contains two independent evidentiary threads that raise a jury question on malice. First, Jackson's own interrogatory answer — filed as Dkt. 115-1 — states under oath: "I did not attend the hearing on October 15, 2019." His payroll records, filed as Dkt. 115-2, show three hours of paid time logged as "ALOHA COURT CCP" on October 15, 2019, at the exact time and location of the administrative hearing at which the citation was dismissed for no complaining witness. The discrepancy between Jackson's sworn statement that he did not attend the hearing and payroll records reflecting paid court time on that date at that location is a credibility issue inappropriate for resolution at summary judgment. A reasonable jury evaluating that discrepancy, together with the fact that the citation was dismissed for no complaining witness, could draw inferences bearing on whether the prosecution was maintained in good faith. Second, the iCloud-metadata-authenticated photograph of Citation FP 1028782, filed as Dkt. 115-3, confirms that the handwritten notation "REFUSED TO SIGN" was written on the citation on September 30, 2019 — the day it was issued. A reasonable jury could conclude from these two threads that no willing complainant existed at the moment of citation issuance, and that the prosecution lacked a good-faith basis from inception. These are

22

jury questions on malice. *Solomon v. City of Naperville,* No. 22 C 4596, 2023 WL 1992195, at \*5 (N.D. Ill. Feb. 14, 2023). That is a jury question on malice.

This case does not turn on hindsight policing critiques. It turns on whether three contemporaneous documents reflecting "REFUSED," the absence of any documented complainant identity, and the absence of any verified corroboration can be reconciled with a later deposition claim of cooperative willingness as a matter of law. Under *Anderson* and *Tolan,* they cannot.

Where contemporaneous official records contradict the officer's asserted factual basis for probable cause, Rule 56 prohibits summary judgment, and reversal is required so that a jury may determine which version of events is credible.

## IV. Appellant Corrects the Kingsley Mischaracterization.

Defendants call Appellant's reference to *Kingsley v. Hendrickson,* 576 U.S. 389 (2015), 'frivolous' because it is a Fourteenth Amendment excessive force case inapplicable to Fourth Amendment probable cause. Appellees' Br. 27-28. Appellant concedes this point.

*Kingsley* does not govern the probable cause standard in this case and Appellant does not press it as controlling authority. The narrower and correct point — which does not require *Kingsley* — is that Jackson himself observed and acknowledged Appellant was visibly shaking and sweating when he requested identification. Dkt. 89-2 at 20-27, 86-87. Jackson attributed this to 'nerves for being caught.' A jury could evaluate whether extending a detention and initiating an administrative tow of a visibly distressed individual — without verified probable

cause, without any positive identification, without confirmed complainant identity —
was objectively reasonable under the Fourth Amendment. That argument falls
squarely within the standard totality-of-circumstances analysis under *Gutierrez,* 722
F.3d at 1008. *Kingsley* is not required, and Appellant withdraws reliance on it. The
Fourth Amendment analysis here proceeds under the objective reasonableness
standard of *Graham v. Connor,* 490 U.S. 386, 388 (1989), and its progeny. The issue
is not force severity but whether the seizure itself was supported by constitutionally
adequate probable cause. Jackson's observed knowledge of Appellant's visible
distress is relevant only as one circumstance in the totality of circumstances bearing
on the reasonableness of the continued seizure under *Gutierrez,* 722 F.3d at 1008.

## V. <u>Qualified Immunity Fails When the Officer's Own Records Contradict His Sworn Account.</u>

Qualified immunity protects reasonable mistakes — not reliance on facts an
officer's own contemporaneous documentation contradicts. Jackson wrote
"REFUSED TO SIGN." He testified that a refused complainant means warning-
only. Acting contrary to his own recorded facts defeats arguable probable cause at
summary judgment.

Jackson's citation reads 'REFUSED TO SIGN.' He wrote those words. His own
deposition says a refused complainant means warning-only. He knew the rule and
wrote the refusal and then cited and towed anyway. Arguable probable cause requires
that a reasonable officer in the same circumstances could believe probable cause
existed based on the information available at the time. This is a lower standard than

actual probable cause — but it is not a meaningless one. An officer who relies on information that his own contemporaneous documentation directly contradicts does not have arguable probable cause; he has objectively unreasonable reliance on a factual premise his own records refute. Qualified immunity protects honest mistakes — not decisions made on information the officer himself documented as false at the time. The cumulative record here forecloses even arguable probable cause. At the moment of citation, Jackson had: (1) an anonymous 911 caller who refused to identify herself to dispatch; (2) an unverified stranger at the entrance whose identity was never confirmed and who provided only a directional gesture; (3) no positive identification of Appellant as the perpetrator; (4) two failed clothing identifiers by his own deposition testimony; (5) no independent observation of criminal conduct; (6) a contemporaneous notation on the citation reading "REFUSED TO SIGN"; and (7) his own stated rule that a refused complainant authorizes only a warning. Qualified immunity does not survive the cumulative weight of these deficiencies. No reasonable officer could believe probable cause existed for citation and impoundment on this aggregate record. Because qualified immunity cannot be granted where material facts bearing on probable cause are genuinely disputed, the district court's immunity ruling cannot stand at summary judgment. *Stainback v. Dixon,* 569 F.3d 767, 773 (7th Cir. 2009) (arguable probable cause does not shield objectively unreasonable conduct in light of available information).

The situation is further compounded by the discrepancy in the record regarding the October 15, 2019 administrative hearing. Jackson's sworn

25

interrogatory answer (Dkt. 115-1) states he did not attend the hearing and did not know its result. His payroll records (Dkt. 115-2) reflect three hours of paid time logged as "ALOHA COURT CCP" on that date — the hearing at which the citation was dismissed for no complaining witness. The discrepancy between Jackson's sworn statement and the payroll records creates a credibility issue inappropriate for resolution at summary judgment. A reasonable jury could view this inconsistency as bearing on the reliability of Jackson's account generally and on whether his good-faith belief in probable cause is credible. Qualified immunity cannot be resolved at summary judgment where the officer's own sworn statements are contradicted by documentary records. *Hunter,* 502 U.S. at 229. Whether Jackson's conduct throughout this matter reflects an honest mistake or knowing false testimony is a credibility question for a jury — not a matter for qualified immunity resolution at summary judgment. *Anderson,* 477 U.S. at 255; *Payne,* 337 F.3d at 776.

Qualified immunity is an affirmative defense on which defendants bear the burden of establishing entitlement. *Payne,* 337 F.3d at 776. Defendants cannot carry that burden by relying on a deposition account that three of their own contemporaneous documents directly contradict.

## VI. The Monell Claim Survives

If a jury could find a constitutional violation, Monell liability cannot be dismissed at summary judgment.

Sergeant Spina authorized the tow based entirely on Jackson's relay that a complainant was willing to sign. Dkt. 89-3. Jackson's citation contemporaneously says "REFUSED TO SIGN."

Where a supervising policymaker authorizes a seizure based on materially disputed or contradicted information, municipal liability presents a jury question. Ledesma addressed statutory interpretation — not constitutional application.

## VII. The IIED Claim Presents a Jury Question

Under McGrath, extreme and outrageous conduct is ordinarily for the jury.

Appellant alleges: detention without probable cause, threats of a K-9, derogatory slurs ("pervert," "sicko"), and continued detention while visibly distressed. This is not mere workplace insult. It involves coercive state authority exercised without verified probable cause.

A reasonable jury could find reckless disregard of emotional harm. Summary judgment was improper.

## VIII.  Class Certification: Appellant Does Not Press This Issue on Appeal.

Defendants devote three pages to arguing Appellant's class certification references were baseless and frivolous. Appellees' Br. 22-23. Appellant does not press a class certification claim on this appeal. References in the opening brief were aspirational statements about potential future relief on remand — not a claim that

the district court erred in failing to certify a class. This Court need not address it, and defendants' framing of it as an independent frivolousness ground carries no weight.

## CONCLUSION

The district court granted summary judgment without addressing the central evidentiary contradiction this case presents: Officer Jackson's own handwriting on Citation FP 1028782 (Dkt. 89-8) says 'REFUSED TO SIGN.' His own police report (Dkt. 89-7 at 2) says 'refused complainant.' Defendants' own dispatcher affidavit (Dkt. 89-5) explains 'REFUSED' means refusal to identify. And Jackson's own deposition (Dkt. 89-2 at 74:7-8) — admitted by defendants (Dkt. 99 ¶ 20) — says a refused complainant means warning-only, not a citation.

These are defendants' own exhibits. No procedural rule — not FRAP 28, not LR 56.1, not the deemed-admitted rule — requires this Court to credit Jackson's deposition narrative over his own contemporaneous handwriting. Under *Anderson v. Liberty Lobby,* 477 U.S. 242, 255 (1986), and *Tolan v. Cotton,* 572 U.S. 650, 660 (2014), that credibility question belongs to a jury.

For the foregoing reasons, Appellant Raymond E. Echevarria respectfully requests that this Court:

(1)  REVERSE the district court's grant of summary judgment on all Counts;

(2)  REMAND for trial; or, in the alternative,

(3)  REMAND with instructions to reconsider the probable cause analysis in light of the unaddressed contradiction between Officer Jackson's sworn testimony and his contemporaneous 'REFUSED TO SIGN' notation — a contradiction that, under

Anderson and Tolan, creates a genuine dispute of material fact precluding summary judgment.

Respectfully submitted,

/s/Michelle Gonzalez

Attorney for Raymond E. Echevarria

Plaintiff-Appellant

Date: February 20, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because it contains 5386 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Century Schoolbook 12-point font.

/s/ Michelle Gonzalez
Date: February 20, 2026

## CERTIFICATE OF SERVICE

I certify that on February 20, 2026, I electronically filed the foregoing Reply Brief of Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit. Service will be made on all registered CM/ECF users, including:

Anthony G. Becknek (agbecknek@ktjlaw.com)
Colleen M. Shannon (cmshannon@ktjlaw.com)

Klein, Thorpe & Jenkins, Ltd.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60606

/s/ Michelle Gonzalez
Attorney for Raymond E. Echevarria